NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WENG,<br><br>　　　　　Petitioner,<br><br>　vs.<br><br>BEN CURRY,<br><br>　　　　　Respondent. | No. C 06-2805 JF (PR)<br><br>ORDER DENYING PETITION<br>FOR WRIT OF HABEAS<br>CORPUS |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the California Board of Prison Terms ("Board") denying him parole. The Court ordered Respondent[1] to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition, and Petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

---

[1] The proper named respondent in this action is Ben Curry, the acting Warden at the Correctional Training Facility in Soledad, where Petitioner is incarcerated. Stanley v. Cal. Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where petitioner is incarcerated is the proper respondent); Rule 2(a), 28 U.S.C. § 2254. Accordingly, the Clerk shall terminate SUSAN FISHER and substitute BEN CURRY as the Respondent.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Weng805den                    1

**BACKGROUND**

Following his 1987 conviction for kidnaping for robbery, assault with intent to commit rape, and robbery, Petitioner was sentenced to a term of seven years-to-life in state prison. Resp. Ex. 3 (July 27, 2004 Parole Consideration Hearing Transcript) at 1-2. On January 6, 1986, Petitioner and two other men, Dennis Chan and Eddie Zheng, followed the Tam family home after the Tams closed their store. Id. at 10. As Mr. and Mrs. Tam and their two young children were about to enter their home, Petitioner and Zheng approached them with guns drawn and forced them to open their door. Id. What ensued was a home invasion robbery lasting about five hours. Petitioner, Chan, and Zheng tied up Mr. and Mrs. Tam, took their jewelry, and searched the house for valuables. Id. The three men stripped Mrs. Tam of her clothing, taped her eyes, photographed her in the nude, and threatened to rape her unless she cooperated. Id. at 17, 22. Petitioner, Chan, and Zheng took approximately $34,000 worth of jewelry and cash. Id. at 14.

After four and a half hours in the Tams' home, Chan and Zheng left with Mrs. Tam to go to the Tams' store and steal additional items of property. Id. at 11. After ransacking the store, Chan and Zheng were driving away with Mrs. Tam when they were pulled over by a San Francisco police officer. Id. Upon realizing that a kidnaping was in progress, the officer arrested Chan and Zheng. Id. When other officers responded to the Tam residence, they discovered that Petitioner had already left. Id. Petitioner was not arrested until July 31, 1986, more than seven months after the offense. Resp. Ex 2 (July 30, 1987, Probation Officer Report and Recommendation) at 6. In the period of time between Petitioner's commitment offense and his arrest, he committed three similar home invasion robberies with other individuals. Resp. Ex. 3 at 65. In those robberies, Petitioner used a firearm and took money and jewelry from families with young children. Id.

On June 30, 1987, Petitioner pled guilty to kidnaping for the purpose of robbery, assault with intent to commit rape, and residential robbery. Resp. Ex. 1 (July 30, 1987, Abstract of Judgment) at 1, 3. Petitioner was sentenced to seven years-to-life in state prison. Resp. Ex. 3 at 1. Following a parole consideration hearing on July 27, 2004, the Board denied Petitioner parole. Petitioner filed a state habeas petition in the San Francisco Superior Court, which was denied on

May 27, 2005. The California Court of Appeal summarily denied a state habeas petition on November 17, 2005, and the California Supreme Court summarily denied a similar habeas petition on February 22, 2006. Petitioner filed the instant federal petition on April 24, 2006.

## DISCUSSION

**A.   Standard of Review**

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result.

1  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively
2  unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss
3  of error fails to give proper deference to state courts by conflating error (even clear error) with
4  unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).
5        A federal habeas court may grant the writ if it concludes that the state court's adjudication
6  of the claim "results in a decision that was based on an unreasonable determination of the facts in
7  light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d)(2). The
8  court must presume correct any determination of a factual issue made by a state court unless the
9  petitioner rebuts the presumption of correctness by clear and convincing evidence. 28. U.S.C. §
10 2254(e)(1).
11       Where, as here, the highest state court to consider the petitioner's claims issued a
12 summary opinion which does not explain the rationale of its decision, federal review under §
13 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S.
14 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this
15 case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the
16 San Francisco Superior Court.

17 **B.     Subject Matter Jurisdiction**

18       Respondent contends initially that this Court lacks subject matter jurisdiction over the
19 instant petition because California inmates have no federally-protected due process right in
20 parole release. Resp. Mem. at 4-5. Respondent acknowledges the Ninth Circuit's decision in
21 Sass v. California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), but preserves this
22 argument because a petition for rehearing was pending at the time Respondent filed the answer in
23 the instant case. Resp. Mem. at 5.
24       Although a convicted person has no inherent or constitutional right to early release on
25 parole, a state's statutory parole scheme may create "a presumption that parole release will be
26 granted" if it uses mandatory language. Greenholtz v. Inmates of Nebraska Penal & Corr.
27 Complex, 442 U.S. 1, 12 (1979). The Ninth Circuit made clear in Sass that because California's
28 parole statute uses mandatory language, "California inmates continue to have a liberty interest in

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Weng805den     4

1  parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)." Sass, 461 F.3d at 1125 (finding that
2  district court misread Dannenberg which did not hold that there is no constitutionally protected
3  liberty interest in parole – but upholding denial of petition on other grounds).  Because
4  controlling Ninth Circuit authority holds that Petitioner has a constitutionally protected liberty
5  interest in release on parole, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §
6  2254 to decide whether Petitioner's federal constitutional rights were violated by the Board's
7  determination that Petitioner was not suitable for parole.

**C.  Analysis**

   1.  The Board's Decision was Based on "Some Evidence"

Petitioner claims that the Board abused its discretion and violated his right to due process by failing to show that he currently poses an unreasonable risk to society if released.  Petition at 4.  Petitioner argues that the Board failed to show a nexus between the nature of the offense and Petitioner's potential for violence more than twenty years after the offense was committed.  Id.

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process.  Sass, 461 F.3d 1123, 1128-29 (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).  The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.  See Hill, 472 U.S. at 455.  An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses nor weighing of the evidence.  Id.  The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board.  See id.  Accordingly, "if the Board's determination of parole suitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision."  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (citing McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002)).

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations.  California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole.

1  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied
2  parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to
3  society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The regulations direct
4  the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, §
5  2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or
6  not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[2]

   The Board's decision denying parole in this case was based upon its review of the nature
and circumstances of the commitment offense and Petitioner's prior social history and behavior
and programming during imprisonment. The Board concluded that Petitioner posed "an
unreasonable risk of danger to society or a threat to public safety if released from prison." Resp.
Ex. 3 at 63. The Board observed that the commitment "offense was carried out in a dispassionate
and calculated manner and...in a manner that demonstrates a disregard for human suffering." Id.
Petitioner and his crime partners threatened the Tam family with guns in order to get into their
house, where they tied Mr. and Mrs. Tam up with wire, and took their two young children into a
bathroom at gunpoint and held them there. Id. at 63-64. During the robbery, Mrs. Tam was
stripped naked, tied up, photographed, and threatened with rape. Id. at 64.

   Additionally, the Board found that Petitioner had "an escalating pattern of criminal
conduct" where he committed similar home invasion robberies subsequent to, but before being
arrested for, his commitment offense. Id. at 65. Petitioner's lack of remorse and
acknowledgment of his role in his commitment offense also contributed to the Board's finding
that Petitioner was unsuitable for parole. Id. at 68. The Board recognized several factors tending

---

[2] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit. 15, § 2402(d).

1   to show suitability, such as the fact that Petitioner had "no criminal record...as a juvenile and no
2   other arrests as an adult," and that he "has programmed in a limited manner while incarcerated."
3   Id. at 66. However, the Board concluded that the "positive aspects of his behavior and
4   programming do not outweigh the factors of unsuitability," and that Petitioner "continues to be
5   unpredictable and a threat to others." Id. at 66-67.

6   In its order denying habeas relief, the San Francisco Superior Court determined that the
7   record contained some evidence to support the Board's finding that Petitioner is unsuitable for
8   parole. Resp. Ex. 4 (In the Matter of the Application of David Weng, San Francisco Superior
9   Court Order re: Writ of Habeas Corpus, Case No. 5063, May 27, 2005) at 5. The superior court
10  stated as follows:

> The Board concluded that the commitment offense was carried out in an especially cruel and callous manner because multiple victims were attacked during the same and separate incidents. (BT 63.) The offense was carried out in a dispassionate and calculated manner that demonstrates a disregard for human suffering. This is evident from the fact that the commitment offense was very traumatic to the families involved, which also included very young children. (BT 65.) In addition, the victims were subjected to this treatment for approximately five hours. (BT 10.) ¶The law accords the Board wide discretion to weigh the evidence in the case. (15 CCR § 2402 (c)); In re Powell (1988) 45 Cal.3d 894, 902.) Clearly, the Board is concerned with how Petitioner will deal with conflicts if released. There is evidence that Petitioner is on the right track but the Board found Petitioner unsuitable for release because he would pose an unreasonable risk of danger to society if released from prison. The Board acted within its discretion in finding Petitioner unsuitable for parole. Resp. Ex. 4 at 5. Thus, the superior court agreed with the Board that Petitioner would pose an unreasonable threat to public safety if released from prison. Id.

20  Here, the Board's decision denying Petitioner parole was based upon the nature and
21  circumstances of Petitioner's commitment offense, Petitioner's need to participate in additional
22  self-help programs, and Petitioner's lack of remorse and acknowledgment of his role in his
23  commitment offense. The Board properly considered the nature of Petitioner's commitment
24  offense in its decision to deny parole. See In re Rosenkrantz, 29 Cal. 4th 616, 682-83 ("the
25  [Board] properly may weigh heavily the degree of violence used and the amount of viciousness
26  shown by a defendant"). Beyond the commitment offense, the Board found other evidence that
27  Petitioner remained an "unreasonable risk of danger to society if released from prison." Cal.
28  Code of Reg., tit. 15, § 2402(a); see supra at 7. Accordingly, this Court concludes that the

Board's findings are supported by "some evidence," and the evidence underlying the Board's decision has some "indicia of reliability." Biggs v. Terhune, 334 F.3d 910, 915 (9th. Cir. 2003) (citing McQuillion, 306 F.3d at 904).

Petitioner's contention that the Board failed to show a nexus between the nature of the offense and Petitioner's potential for violence is without merit. Petition at 4. The Board's findings indicate that Petitioner's potential for violence still exist, independent of his commitment offense. The Board properly considered and gave weight to Petitioner's subsequent involvement in home invasion robberies, his lack of remorse at the parole hearing, and lack of acknowledgment of his role in his commitment offense. The Board also found that Petitioner needed to attend additional self-help programs in order to rehabilitate and reform himself. All of these factors demonstrate that Petitioner still demonstrates the potential for violence.

This Court concludes that Petitioner's right to due process was not violated. Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

2. The Board is Not Required to Set a Release Date Until Petitioner is Found Suitable for Parole.

Petitioner next claims that the Board violated his right to due process by failing to set a release date based on the circumstances surrounding the commitment offense. Petition at 4. As discussed above, California prisoners have a constitutionally protected liberty interest in release on parole. See supra at 4-5. Accordingly, they cannot be denied a parole date (i.e., the Board cannot decline to grant a parole date and cannot rescind an already-granted parole date) without adequate due process. California's statutory parole scheme creates a presumption that the Board "shall set a release date *unless* it determines that the gravity of the current convicted offense...is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." Cal. Penal Code § 3041(b) (emphasis added). Thus, the Board may set a release date, but it is not required to do so if certain findings are made. This legal standard comports with clearly-established Supreme Court precedent. See Greenholtz, 442 U.S. at 7 ("There is no

constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

After conducting a full suitability hearing and reviewing the facts in Petitioner's case, the Board found Petitioner unsuitable for parole based upon the gravity of the commitment offense, Petitioner's insufficient participation in self-help programs and Petitioner's "escalating pattern of criminal conduct." Resp. Ex. 3 at 65. As set forth above, the Board's findings were supported by some evidence, as required by Superintendent v. Hill, 472 U.S. 445, 455-57 (1985). Under these circumstances, the Board was not obligated to set a parole date for Petitioner under the guidelines set forth in § 3041(b). Petitioner received the procedural protections necessary to satisfy due process in the underlying parole suitability hearing. The state court's rejection of this claim was not contrary to, nor an unreasonable application of, clearly established federal law, nor was it based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 3/31/08

JEREMY FOGEL
United States District Judge